IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LINDA S. FREDEBAUGH, | ) CASE NO. 1:08 CV 621 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| ROCKWELL AUTOMATION/RELIANCE ELECTRIC TECHNOLOGIES, *et al.*, | ) <u>MEMORANDUM OPINION</u> <u>AND ORDER</u> |
| Defendants. | ) |

This case is before the Court on Defendants' Motion for Summary Judgment. (ECF #20). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Rockwell Automation/Reliance Electric Technologies and Rockwell Automation dba Rockwell Automation of Ohio ("Rockwell") have petitioned the Court for summary judgment dismissing Plaintiff, Linda S. Fredebaugh's claims for denial of benefits under the Employee Retirement Income Security Act ("ERISA") and for misrepresentation.  For the reasons set forth below, Defendants' motion is  GRANTED in part and DENIED in part.

**Procedural and Factual Background[1]**

Plaintiff Linda Fredebaugh ("Plaintiff") filed this action against Rockwell on February 1, 2008 in the Court of Common Pleas for Cuyahoga County. The Defendants removed the action to Federal Court pursuant to 28 U.S.C. §1441 because the claims asserted in Plaintiff's Complaint arise under the laws of the United States and this Court has original jurisdiction over such actions pursuant to 28 U.S.C. §1331. The Complaint alleges that during the course of her employment relationship with Rockwell she was denied "pension benefits and salary commensurate with the employees of Defendant;" was denied "the opportunity to participate in the employee pension plan offered by the Defendants;" was denied the "opportunity to participate in ERISA benefits offered to full time employees, including Health Insurance and other benefits;" and was "prevented from receiving benefits commensurate with the full time employees" of Defendants. Ms. Fredebaugh also alleges that "Defendants made material misrepresentations to [her] regarding her being able to participate in securing a full time salaried position where she could enjoy the benefits that her coworkers enjoyed while she was in the employ of the Defendants." The Complaint seeks compensatory and punitive damages, as well as injunctive relief.

Ms. Fredebaugh began working for RA Studios/AVID Communications – a division of Rockwell Automation – ("AVID/Rockwell") in October of 1999. (Plaintiff Depo. at 15). She worked in finance, and understood that she was hired as an independent contractor and that no taxes

---

[1]The factual summary is based upon the parties' statements of facts. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party. Such statements are taken as true for purposes of this Summary Judgement Motion only, and should not be considered established for purposes of any future trial.

would be withheld from her paycheck. (Plaintiff Depo. at 29-30, 48-50). Plaintiff continued to provide services directly to AVID/Rockwell until 2004.

While being paid by Rockwell, Ms. Fredebaugh was paid hourly, and she did not have a written contract with AVID/Rockwell. (Plaintiff's Depo. at 34-35, 60). She reported to work at an AVID/Rockwell building, and was required to track her hours (including time in, time out, and lunch breaks) and file a time sheet. (Plaintiff's Depo. at 33). She was provided with an office, computer, telephone, fax number, and email address by AVID/Rockwell, and used Rockwell's systems to complete her finance duties. was also directly supervised by an AVID/Rockwell employee, Mike McKenney. (Plaintiff's Depo. at 34; McKenney Aff. ¶ 3).[2] When she needed help completing her work she did not hire her own assistant, but requested that AVID/Rockwell hire someone to help her. (Plaintiff's Depo. at 40). She worked all week days during regular business hours. (Plaintiff's

---

2

Defendants have filed a Motion to Strike Keith M. McKenney's Affidavit. (ECF #29). The Court finds this motion to meritorious, in part. Paragraphs 4-11, 13, 20, 21-23, portions of 27, and 29 are stricken as they do not clearly satisfy the requirements of Fed. R. Civ. Pro. 56(e); it is not clear that the information provided therein is based solely on Mr. McKenney's own personal knowledge of the facts involved. It is possible, if called as a witness as trial, that he could establish that he did have personal knowledge of some or all of the stated facts, however, the affidavit does not establish this requirement. To the degree that any of the remaining statements may appear to constitute conclusory statements or opinion testimony, the Court will view those statements only as a description of the facts as seen by Mr. McKenney, and not as legal conclusions or legal opinions. Paragraphs 16, 17, and 18 include information that may be protected by attorney/client privilege, as does the referenced Memo that is attached as an Exhibit to the Affidavit. The parties have not provided information sufficient for the Court to determine with certainty whether that information was disclosed to a third-party (an issue that would depend in large part on the employment status of the alleged "third-party" Deborah Neilly at the time of the communications, and the circumstances under which she obtained a copy of the Memo at issue. However, as the information contained within the Memo and the portions of the affidavit at issue are not necessary to the determination of this motion for Summary Judgment, the Court will disregard those sections and reserve ruling on the privileged status of the Memo and the attendant communications referenced in the affidavit.

Depo. at 42). Her hours were set by her supervisor Mr. McKenney. (Plaintiff's Depo. at 58). Ms. Fredebaugh also received performance evaluations in combination with raises, and was formally evaluated by her supervisor, annually. (Plaintiff's Depo. at 42-43; McKenney Aff. ¶ 19).[3]

During Ms. Fredebaugh's tenure at AVID/Rockwell, Mr. McKenney repeatedly stated that he would use his best efforts to get her hired as a salaried employee. (McKenney Aff. ¶ 24; Plaintiff's Depo. at 38-39, 50). Mr. McKenney left Rockwell in May of 2004. Ms. Fredebaugh also argues that three other people told her that they could not make her a salaried employee because "their hands were tied" and there was not enough money. However, the deposition pages cited by Plaintiff in support of this argument do not provide proof for this allegation. In her deposition, Ms. Fredebaugh identifies Mike McKenney, Mike Brown, Dave Simpson, and Dave Puette as individuals who made misrepresentations to her. However, with the exception of alleged misrepresentations made by Mr. McKenney, she has not identified any evidence in the record that identifies any alleged misrepresentations by the Mr. Brown, Mr. Simpson or Mr. Puette, or the time frame for any of those alleged misrepresentations.[4]

From 2004 to 2008, she provided similar services to AVID/Rockwell through temporary

---

[3] In their Motion to Strike Mr. McKenny's Affidavit, defendants argue that Ms. Fredebaugh's statements that she did not receive annual reviews contradicts Mr. McKenny's affidavit stating that he completed regular annual reviews of her performance. These statements are not necessarily contradictory. It is very possible that Mr. McKenny performed annual reviews, but did not communicate every review to Ms. Fredebaugh. However, even if it were contradictory, this would constitute an issue of disputed fact.

[4] A district court is not required to search the record to determine whether genuine issues of material fact exist where a non-moving party has failed adequately to respond to a summary judgment motion. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

agencies. During those years she was paid by the temporary agencies, and not directly by Rockwell. Her employment relationship with Rockwell ended entirely in February of 2006.

### **Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

**Analysis**

A. Count One (Denial of Benefits)

    1. Standing

The civil enforcement provisions of ERISA allow a "participant or beneficiary" to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan . . . ." 29 U.S.C. §1132(a)(1)(B).   In addition, a "participant, beneficiary, or fiduciary" may bring an action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations of (ii) to enforce any provision of this title or the terms of the plan."  29 U.S.C. §1132(a)(3).

    ERISA defines a participant as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. §1002(7).  ERISA further defines an "employee" as "any individual employed by an employer."  29 U.S.C. §1002(6).

    Courts considering who may be an employee for purposes of ERISA have adopted a common-law test for distinguishing between and employee and an independent contractor, or other service provider.  *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 439 (6th Cir. 2006).  "The determination of whether a plaintiff qualifies as an employee is a 'mixed question of law and fact' that a judge can normally make as a matter of law."  *Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004).

The parties agree that the common law test for determining who is an employee looks mainly at the degree to which the hiring party retains the right to control the manner and means by which the service is accomplished. *Darden*, 503 U.S. at 323-24. This determination requires an analysis and balancing of the following factors:

> the skill required; the source of instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.*; *Moore*, 458 F.3d at 439 (citing *Violence v. Reid*, 490 U.S. 730, 751-52 (1989)).

Rockwell claims that Ms. Fredebaugh lacks standing to bring a claim under ERISA because she was never an employee of AVID/Rockwell. Rather, Rockwell contends that Ms. Fredebaugh was hired as an independent contractor, and remained in that role from 1999 to 2004. In 2004 she was employed by a temporary employment agency, through which she continued to provide services for AVID/Rockwell. Rockwell claims that Ms. Fredebaugh provided contract services for the company, although there is no evidence of a contract governing their employment relationship. She understood that Rockwell intended to classify her as an independent contractor, and that no taxes were withheld from the compensation she received.[5] Rockwell also claims that the services Ms. Fredebaugh provided (finance administration) was not a part of Rockwell's regular business because Rockwell's business was video and print media production. Ms. Fredebaugh admits she did not participate in any video or

---

[5] Ms. Fredebaugh received 1099s and not W2s in connection with her employment.

-8-

print media production.[6]

On the other hand, Ms. Fredebaugh claims that even if these factors weigh against classifying her as an employee, the remaining factors weigh in favor of such a designation. She contends that AVID/Rockwell had control over the manner and means by which she performed her work. She has provided some evidence that the job did not require a high level of skill or education; that AVID/Rockwell provided the instrumentalities and tools she use; that she told to hold herself out as an employee of the company when talking with customers or other employees; that she worked on-site; was assigned a variety of different tasks or projects over the years; that her supervisor on-site controlled her work hours; that the duration of her work relationship was significant; that she was not able to hire her own assistants; and that she received benefits in the form of paid vacation and sick leave; and that she was paid hourly rather than on commission or by the project. Further, the fact that Rockwell designated Ms. Fredebaugh as and independent contractor, or that she understood that this was the designation they intended, is not dispositive of the issue. *See, Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996)(signing an independent contractor agreement does not equate to a waiver of employee rights under ERISA).

Based on the evidence available at this stage of the litigation, and taking the facts in the light most favorable to Ms. Fredebaugh, the Court cannot say as a matter of law that she was not

---

[6]

It is not clear that providing financial administration services to a on-going for profit business should not be considered part of the company's regular business. Although it is not part of the service provided by the company, no company can exist or operate without regular and ongoing attention to its finances. Managing the finances of a company is not separate from the company's business in the same way that providing day care services to employees, handling a take over transition may, or hiring a contractor to expand or improve the facilities may be.

an employee for purposes of ERISA.  There is at best a question of material fact as to her proper legal designation, and therefore, the issue is better determined at trial.

        2. <u>Exhaustion of Remedies</u>

Defendant also claims that Ms. Fredebaugh's ERISA claim is barred because she did not exhaust her administrative remedies prior to initiating this lawsuit.  "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit. . . ."  *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). However, where a claimant demonstrates that "pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement."  Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 588 (2d Cir. 1993); *Pease v. Hartford Life & Accident Insurance Co.*, 449 F.3d 435, 446 (2d Cir. 2006).  Failure to exhaust administrative remedies is an affirmative defense that must be established by the Defendant with the requisite level of proof.  *Pease*, 449 F.3d at 446.

Neither side has provided any case law addressing the issue of whether an "unacknowledged" employee (or wrongfully designated employee) is relieved of the duty to attempt administrative remedies under the futility exception.  However, based on the circumstances of the case, it appears more likely than not that any attempt Ms. Fredebaugh might have made to pursue ERISA benefits through the administrative process would have been futile. Defendant contends that she is an independent contractor with no standing to pursue benefits, and has provided no evidence or reason to suspect that she would have been allowed to, or had the means to submit a claim for ERISA benefits under the plan.

B. Count Two (Misrepresentation)

Plaintiff alleges that "Defendants made material misrepresentation to [her] regarding her being able to participate in securing a full time salaried position where she could enjoy the benefits that her coworkers enjoyed. . . ." (Complaint ¶34). The alleged representations were promises relating to future actions or conduct, and were not related to past or existing facts. Ohio law does not support a claim of misrepresentation under these circumstances. *See GEM Industrial, Inc. v. Sun Trust Bank*, N.D. Ohio No. 3:08 CV 2991, 2010 U.S. Dist. LEXIS 31042, *23-24; *Telxon Corp. v. Smart Media of Delaware, Inc*., 9th Dist. No. 22098 and 22099, 2005-Ohio-4931.

In addition, Plaintiff has not identified any precise statements other than those made by Mr. McKenney.[7] The identified statements by Mr. McKenney did not promise that she would be made a salaried employee, only that he would try to get her designated as such. (Plaintiff's Depo. at 48, 50-51). There is no evidence that this representation was false, as Mr. McKenney attested that he did, indeed, try to obtain a reclassification for Ms. Fredebaugh, albeit unsuccessfully. (McKenney Aff. ¶ 14-15). Therefore, there is no evidence to support a claim for

---

[7] In her deposition, Ms. Fredebaugh states that three other individuals made material misrepresentations to her leading her to believe that she would be made a salaried employee, but she does not identify any of the alleged statements, when they were made, or where they were made. In fact, in her deposition, she only says that she approached these other men asking to be made a full time employee and they told her that it was not possible. (Plaintiff's Depo. at 60). She had exhibited no justifiable reliance on this alleged representation as she maintained her employment relationship with Rockwell under the same conditions she had been experiencing, and continued her attempts to obtain a reclassification as a salaried employee.

misrepresentation. [8]

C. Jury Demand

Defendants have also moved to strike the jury demand included in Ms. Fredebaugh's Complaint.  A Plaintiff does not have a right to a jury trial on an ERISA claim.  *See Little v. UNUMProvident Corp.*, 196 F.Supp.2d 659, 672-73 (S.D. Ohio 2002)(citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).   Plaintiff's Complaint alleges that she was denied an opportunity to "participate in the ERISA benefits offered to full time employees, including Health Insurance and other benefits."  (Complaint ¶ 31).  The denial of "benefits" generally was also mentioned in various places within the Complaint.

Plaintiff argues that the Complaint was not limited to a claim for ERISA benefits, but that she also sought other benefits provided to full time employees of Rockwell.  This argument fails, however, because even at this late date in the litigation, Plaintiff has not identified any non-ERISA benefits that she would have been entitled to had she been designated as a full time salaried employee, that she did not already receive.  Further, she admitted in her deposition that she was provided with paid sick time and paid vacation.  Having failed to identify any non-ERISA benefits at stake in this litigation, the Court finds that her claims are limited to ERISA benefits, and that, therefore, she is not entitled to a jury.

---

[8] In so far as the benefits allegedly promised to the Plaintiff include ERISA benefits, Plaintiff's misrepresentation claim is also barred by the doctrine of preemption.  See *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)("this circuit ... has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA" including promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith); *Hardy v. Midland Enterprises, Inc.*, 66 Fed. Appx. 535, 539 (6th Cir. 2003); *see also, Hendricks v. Home Depot, Inc.*, S.D. Ohio No. 1:04 CV 420, 2006 U.S. Dist. LEXIS 85889, *11-14).

### **Conclusion**

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF # 20)is GRANTED in part, and DENIED in part;  Defendants' Motion to Strike Keith M. McKenney's Affidavit (ECF #29) is GRANTED in Part, and DENIED in Part; and, Defendant's Motion to Strike Plaintiff's Jury Demand is GRANTED.  (ECF #18).  Further, the trial date for this case is extended from November 8, 2010 to December 13, 2010 at 8:30 a.m.  IT IS SO ORDERED.

        /s/Donald C. Nugent
        DONALD C. NUGENT
        United States District Judge

DATED:   October 28, 2010